IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOEY WOODUS                                                      PLAINTIFF

v.                          CASE NO. 4:16-CV-745 BRW

UNION PACIFIC RAILROAD COMPANY                         DEFENDANT

## DEFENDANT'S PRETRIAL DISCLOSURES

Comes Defendant Union Pacific Railroad (hereinafter "UPRR"), by and through its undersigned counsel, FRIDAY, ELDREDGE & CLARK, LLP, and for its Pretrial Disclosures, states as follows:

(1)     The identity of the party submitting information:

Union Pacific Railroad Company

(2)     Contact information for all Union Pacific Railroad Company counsel:

Elizabeth Robben Murray
Telephone: (501) 370-1534
E-mail: Murray@fridayfirm.com

Khayyam M. Eddings
Telephone: (501) 370-1417
E-mail: Keddings@fridayfirm.com

Allison C. Pearson
Telephone: (501) 370-3309
E-mail: Apearson@fridayfirm.com

FRIDAY, ELDREDGE & CLARK LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201

Torry N. Garland (Neb. Bar # 21624)
Union Pacific Railroad Company,
Law Department
1400 Douglas Street
Omaha, NE 68179
Telephone: (402) 544-3135

E-mail: Tngarlan@up.com

(3)     A brief summary of all claims and relief sought:

In his Complaint the Plaintiff alleges three (3) causes of action under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12-101 *et seq.* and two causes of actions under the Arkansas Civil Rights Act ("ACRA") A.C.A. § 16-123-107.

(4)     Prospects for settlement:

Defendant requested an initial settlement demand from Plaintiff, which Plaintiff provided.   Defendant is in the process of assessing Plaintiff's initial settlement offer.

(5)     The basis for jurisdiction and any objections to jurisdiction:

28 U.S.C. § 1332

(6)     A list of pending motions:

Defendant's Motion for Summary Judgment

(7)     A concise summary of the facts:

On March 2, 2016, the Plaintiff was employed as a trackman by the Defendant.   On that date, Plaintiff's fellow crew members found him in his bed while on assignment in Oklahoma with stroke-like symptoms.   An ambulance was called to transport the Plaintiff to the hospital.   Following such an event, the Plaintiff is not fit for duty until Defendant's Health and Medical Services ("HMS") has evaluated and determined the employee's ability to safely perform duties. Based on the review of the Plaintiff's available medical records, the Plaintiff's job duties, and applicable guidelines, HMS staff placed certain medical restrictions on the Plaintiff.   Mark A. Wheeland, Chief Engineer for Maintenance of Way –

Southern Region, determined that the medical restrictions could not be accommodated in Plaintiff's trackman position. Accordingly, Plaintiff was found not to be fit for duty at the time and has remained off work since March 2, 2016.

(8)     Proposed Stipulations:

1.      Plaintiff Joey Woodus began his employment with UPRR in July 1996 as a trackman. *See* Exhibit 1 to Defendant's Motion for Summary Judgment ("Def's MSJ"). Most recently, Woodus worked as a track maintenance worker with machine operator rights. *Id.*

2.      On March 2, 2017, Woodus was in Duncan, Oklahoma. Early in the morning, Woodus' coworkers discovered him in a hotel room, confused and shaking. He was taken to Duncan Regional Hospital emergency room via emergency medical services. Medical personnel made findings of altered mental state, aphasia and slurred speech. Woodus was admitted to the hospital. A CT head scan showed no evidence of any acute stroke, but showed left frontal changes likely representing a prior stroke. An MRI was ordered, but Woodus was unable to complete the MRI due to nausea. Later, Woodus refused to complete the MRI and checked himself out of the hospital against medical advice. *See* Exhibit E to the Declaration of Dr. Charbonneau ("Charbonneau Decl.") attached to Def's MSJ as Exhibit 3 at pp. DF_000301-302.

3.      Upon returning to the Little Rock area, Woodus was seen by his family physician, Dr. Archie Hearne, M.D. Based on his office exam, Dr. Hearne issued a return to work slip for Woodus, without having reviewed the records of the March 2, 2017 event in Duncan, Oklahoma. Nor did Dr.

Hearne have the benefit of any description of the job Mr. Woodus held at UPRR.  Deposition of Dr. Archie Hearne ("Hearne Dep.") attached to Def's MSJ as Exhibit 6 at pp. 6:9-10, 9:3-16; *see also* Exhibit 3 to Hearne Dep.

4.      On March 2, 2016, Woodus's manager reported to HMS that Woodus had stroke-like symptoms and was taken to the Duncan Regional Hospital emergency room via emergency medical services.  Mr. Woodus stated to HMS that he had not had a stroke in 2016, but stated that he had one the year before, in 2015.   Exhibit C to Charbonneau Decl. at p. DF_001741.

5.      Dr. John Charbonneau, Associate Medical Director for Union Pacific Railroad, determined that based on the information available, Mr. Woodus could not return for work and was not fit for duty and that HMS would need all records from all providers that had treated him since the episode started and the records from the prior year stroke.  In addition, Dr. Charbonneau stated that full neurology and cardiology evaluations for the syncopal episode would be required.  Charbonneau Decl. at p. 4, ¶ 14.

6.      Mr. Woodus remained on medical leave through August of 2016.  In that time period, HMS received medical records from Duncan Regional Hospital, records from Dr. Randy Minton, a cardiologist, and records from Dr. Mohammed Daaif, a neurologist.  Dr. Minton found no significant cardiac problem and expressed an opinion that Mr. Woodus could return to work, however, Dr. Minton was not provided information concerning Mr. Woodus's prior history of stroke.  Hearne Dep. at p. 20:3-21:22; *see also* Exhibit 5 to Hearne Dep.

7.      On August 12, 2016, Dr. Charbonneau reviewed the report from Dr. Mohammed Daaif, the neurologist who examined Woodus.  Charbonneau Decl. at p. 7, ¶ 21; Exhibit C to Charbonneau Decl. at p. DF_001736.  Dr. Daaif had opined that Woodus could return to work. Exhibit I to Charbonneau Decl.  Dr. Charbonneau noted that the Plaintiff had provided historically inaccurate information to Dr. Daaif, telling him that he had never had a stroke and that his symptoms were due to a reaction to cold medication.  Woodus' brain MRI, however, showed the previous cardiovascular accident.   Charbonneau Decl. at p. 7, ¶ 21.   Dr. Charbonneau determined that the March 2, 2016 event remained an unexplained episode of loss of consciousness and that the employee would require sudden incapacitation restrictions for a one-year period from the date of the event in question, March 2, 2016.  *Id.*  Dr. Charbonneau assigned the following medical restrictions to Mr. Woodus:

1.      Not to operate company vehicles, on-track or mobile equipment, or fork-lifts.

2.      Not to work on rail trains or work trains dumping ballast. (Can perform work remaining between the rails of the occupied track or to the filed side of the occupied track. Where there are adjacent tracks with less than 19 foot track centers, utilize on-track safety protection following normal safety and Maintenance of Way rules).

3.      Not to operate cranes, hoists, or machinery, if these activities might create a risk of harm to others or a risk of catastrophic injury to the employee.

4.      Not to work at unprotected heights, over 4 feet above the ground (Can work on the beds of trucks, and occupy bridges following normal safety rules).

5.      Not to work on 1-man or 2-man gangs (i.e., switch oiler, inspector, welder or helper job, 2-man section gang). Must have at least 2 additional employees on gang or at work area in order to use Train Approach Warning regulations (Lookout).

6.      If a new job assignment is considered, out of the Engineering Department, Health and Medical Services must review the job requirements and determine if the employee can safely perform the essential functions of the job.

*Id.* at p. 7, ¶ 21.

8.      Mark Wheeland, Chief Engineer for the Southern Region reviewed the medical restrictions assigned by HMS and determined that he could not accommodate those restrictions. Exhibit C to Declaration of Mark Wheeland ("Wheeland Decl.") attached to Def's MSJ as Exhibit 4.

9.      On August 17, 2016, a letter was sent to the Plaintiff based on HMS's medical restrictions and Mr. Wheeland's determination as to whether Union Pacific could accommodate the restrictions in Mr. Woodus' job as trackman. Exhibit D to Wheeland Dec.

10.     Woodus acknowledged that when he saw the restrictions outlined above, he felt certain that he would not be found fit to return to his position as a track maintenance worker. Deposition of Joey Woodus ("Woodus Dep.") attached to Def's MSJ as Exhibit 7 at 51:2-11. Mr. Woodus also admitted that his job has safety implications for himself, the public, and his co-workers. Woodus Dep. at pp. 59:1-60:3

11.     In May 2017, Woodus contacted HMS stating that he wanted to return to work. Consistent with past correspondence, HMS informed Mr. Woodus that he would require a fitness for duty determination and that he

would need a complete neurological workup.  Exhibit C to Charbonneau
Decl. at p. DF_001730.

12.     Mr. Woodus had a neurological evaluation scheduled with Dr. Daaif
on November 20, 2017.

13.     Mr. Woodus never submitted to Union Pacific the medical records
related to his 2015 stroke.  Union Pacific obtained the records from Baptist
Medical Center.  Both Dr. John Holland, Chief Medical Officer, and Dr.
Charbonneau reviewed the 2015 brain MRI and cerebral angiogram.
Exhibit C to Charbonneau Dec. at p. 2.  The MRI indicated multiple
strokes that occurred involving the cortical areas of the left hemisphere.
The cerebral angiogram of April 16, 2015 showed an occlusion of the left
middle cerebral artery and the left vertical artery.  Exhibit J to
Charbonneau Decl.  Under the Federal Motor Carrier Safety
Administration ("FMCSA") guidelines adopted and relied upon by Union
Pacific these findings would require five years of sudden incapacitation
work restrictions from April 2015 until April 2020.  Charbonneau Decl. at
p. 9, ¶ 26; *see also* FMCSA Evidence Report attached to Def's MSJ as
Exhibit 8 at p. DF_000439.

14.     Union Pacific's fitness-for-duty evaluations are governed by its
Medical Rules.  The rules provide that, "HMS is the final authority for
determining an employee's Fitness-for-duty designation.  HMS will
respond to supervisor concerns regarding an employee's ability to safely
perform duties."  Regarding an employee's obligations during the fitness-

for-duty evaluation process, the Medical Rules provide, in relevant part, that all employees are responsible for:

1. Reporting to work fit for duty to safely perform their jobs with or without reasonable accommodations

2. Undergoing a Fitness-for-Duty evaluation, including all medical tests, examinations, and evaluations deemed necessary by various governmental agencies and HMS.

3. Providing accurate information to Health and Medical Services regarding health status and medical treatment.

Exhibit B to Charbonneau Decl. at p. DF_000103.

15. For Dispatchers and Operating Department field employees, which includes Engineering Services, and by extension Mr. Woodus's position as a track maintenance worker, the Medical Rules specify further employee responsibilities including, in relevant part:

1. Notify HMS as soon as practicable if he/she experiences any of the health events listed in Appendix B of these Medical Rules. A reportable health event is defined as a new diagnosis, recent event or change in a prior stable condition, for one of the following (See Appendix B for more detail): a) Cardiovascular Conditions b) Seizure or Loss of Consciousness c) Significant Vision or Hearing Changes d) Diabetes Treated with Insulin e) Severe Sleep Apnea

2. The employee should simultaneously notify his/her supervisor that he/she has experienced a health event, as defined in Appendix B, that requires a Fitness-for-Duty evaluation by Health and Medical Services prior to performing his/her job.

3. If the employee experiences a health event noted in Appendix B, the employee should not report for, or perform, his/her job until Fitness-for-Duty clearance has been provided for such work by HMS.

*Id.*

8

16.     For purposes of conducting Fitness-for-Duty evaluations, Union Pacific's Medical Rules state that HMS may rely on relevant "guidelines or other materials produced by government agencies," including the Federal Motor Carrier Safety Administration ("FMCSA").  *Id.* at p. DF_000106.

17.     Woodus filed a charge of discrimination under the Americans with Disabilities Act on September 2, 2016.  The EEOC issued a notice of rights to Mr. Woodus on September 7, 2016.  Woodus filed the instant lawsuit alleging violations of the Americans with Disability Act and the Arkansas Civil Rights Act on October 13, 2016.

18.     Woodus does not claim to have any actual disability.  Woodus Dep. at p. 16:14-19.

19.     Union Pacific searched the email of Mark Wheeland from 2013 through 2016 for any medical questionnaires or medical restrictions for employees under his supervision.  The search only returned one employee under Wheeland's supervision who had similar restrictions as Woodus. That individual, referred to as "Employee A" to maintain confidentiality by agreement of the parties, experienced a cortical stroke and was assigned five years of sudden incapacitation medical restrictions.  Wheeland Decl. at pp. 2-3, ¶¶ 6-11.

(9)     The issues of fact expected to be contested:

Defendant does not believe the material facts are in dispute.

(10)    Issues of law expected to be contested:

Defendant notes that Plaintiff expressly abandoned his claims raised under the Arkansas Civil Rights Act ("ACRA").  Thus, Defendant does not believe

there are issues of law in dispute regarding Plaintiff's Counts IV and V. Further, Plaintiff did not address his Count II for unlawful medical requests under the ADA or Count III for failure to accommodate under the ADA in his Response to Defendant's Motion for Summary Judgment. Thus, Defendant does not anticipate any issues of law in dispute as to Plaintiff's Counts II and III. Defendant anticipates the following issues of law to be contested as to Plaintiff's Count I for disability discrimination under the ADA:

a)      Whether Defendant regarded Woodus as having a disability;

b)      Whether Defendant had a legitimate business reason for assigning plaintiff medical restrictions;

c)      Whether Defendant's fitness for duty procedures and the Agency guidance relied upon were job-related and consistent with business necessity;

d)      Whether Woodus posed a direct threat to the health and safety of others in the workplace; and

e)      Whether Woodus adduced evidence to rebut Defendant's neutral and non-discriminatory reasons for assigning Plaintiff medical restrictions.

(11)    A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar object which may be used in opening statements, closing arguments, or any other part of the trial, whether or not they will be offered in evidence:

**Exhibit 1**    04/12-20/2015 Baptist Health Medical Center Records [DF_001742-002436]

*Defendant will have the complete Baptist Health Medical Center records available during trial but anticipates relying primarily on the following excerpts:*

        04/12/15 Hospital Admission record [DF_001742-001750]

        04/12/15 CT Scan of Head [DF_001765-001767]

        04/13/2015 MRI [DF_001860-1861]

        04/13/2015 Echocardiogram [DF_001806-001811]

        04/16/2015 Cerebral Angiogram [DF_001864-001865]

        04/20/2015 Records regarding Lumbar Puncture not performed [DF_001791-001796]

        04/20/2015 Discharge Summary [DF_001983-001991]

**Exhibit 2**    Duncan Hospital Records [DF_000297-319]

**Exhibit 3**    03/03/2016 Treatment Records of Dr. Archie Hearne [DF_000324-000336]

**Exhibit 4**    03/30/2016 Treatment Records from Dr. Randy Minton, Arkansas Cardiology [DF_000371-000372]

**Exhibit 5**    04/29/2016 Chenal MRI [DF_000376]

**Exhibit 6**    06/07/16 EEG [DF_000383-385]

**Exhibit 7**    07/13/2016 Dr. Daaif Evaluation [DF_000393-394]

**Exhibit 8**    08/24/2016 Dr. Daaif Release [DF_000414]

**Exhibit 9**    08/01/2017 Baptist Neurology Outpatient Clinic Record of Timothy M. Booker, PA [DF_001722-001723]

**Exhibit 10**    11/20/2017 Dr. Daaif Treatment Records and Release [Exhibit 4, Plaintiff's Response to Defendant's MSJ; Doc. # 30-4, at pgs. 7-11]

**Exhibit 11**    UPRR Employee Personal Data Sheet [DF_000001]

**Exhibit 12**   UPRR Track Laborer Job Description [DF_000099-101]

**Exhibit 13**   Joey Woodus Wage History

**Exhibit 14**   UPRR Medical Rules [DF_000102-113]

**Exhibit 15**   UPRR Drug and Alcohol Policy [DF_000114-000161]

**Exhibit 16**   UPRR Medical Comments History for Joey Woodus
[DF_001726-1741]

**Exhibit 17**   03/03/2016 HMS Status Update – Fitness for Duty
Determination  [DF_000322]

**Exhibit 18A** 03/04/2016 [DF_000337-338]
**Exhibit 18B** 04/05/2016 [DF_000378-379]
**Exhibit 18C** 05/13/2016 [DF_000381-382]
**Exhibit 18D** 08/11/2016 [DF_000396-397]
**Exhibit 18E** 08/15/2016 UPRR HMS Restriction Review Form
[DF_000400-401]
**Exhibit 18F** 08/17/2016 Wheeland letter to Woodus
[DF_000403]
**Exhibit 18G** Documents pertaining to "Employee A"
[DF_002537; DF_002497-2529 ]

**Exhibit 19**   08/22/2016 Letter to Woodus re vocational counseling with
attachments [DF_000406-409]

**Exhibit 20**   Agency Guidance Documents [DF_000434-001720]

*Defendant will have complete versions of all guidance
documents provided to Plaintiff available during trial, but
anticipates relying primarily on the following excerpts:*

Guidance Document: FMCSA Evidence Report of
September 2008 [DF_000434-449]

Guidance Document: Hegmann, et al., *FMCSA's
Medical Review Board: Five years of Progress in
Commercial Driver Medical Examinations* 54 J. Occ.
Envtl. Med.  424 (2012) [DF_001012-1018]

Guidance Document: Excerpt of FMCSA Medical
Examiner Handbook [DF_001177-1185]

**Exhibit 21**   Curriculum Vitae of Dr. John Charbonneau

(12)    The names and contact information of witnesses:

Defendant will call the following:

Mark Wheeland

Frank Packard

Dr. John Charbonneau

Defendant may call the following:

Deb Gengler

Rhonda Ross

Dr. Archie Hearne

Terry Owens

(13)    Current status of discovery:

The discovery cutoff date was November 1, 2017.

(14)    An estimate of the length of trial:

4 days

Elizabeth Robben Murray (Ark. Bar #79244)
Khayyam M. Eddings (Ark. Bar #2002008)
Allison C. Pearson (Ark. Bar #2017122)
FRIDAY, ELDREDGE & CLARK LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201
Telephone: (501) 370-1534
Facsimile: (501) 376-3476
E-mail: Murray@fridayfirm.com
E-mail: KEddings@fridayfirm.com
E-mail: APearson@fridayfirm.com

Torry N. Garland (Neb. Bar # 21624)
Union Pacific Railroad Company,
Law Department
1400 Douglas Street
Omaha, NE 68179
Telephone: (402) 544-3135

E-Mail: tngarlan@up.com

By: */s/ Elizabeth Robben Murray*
      Elizabeth Robben Murray

**Attorneys for Defendant**
**Union Pacific Railroad Company**

## CERTIFICATE OF SERVICE

I, Elizabeth Robben Murray, certify that on this 2nd day of January, 2018, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following CM/ECF user:

Chester H. Lauck, III
chet@laucklawfirm.com

James R. Ferguson
Jferguson.raillaw@gmail.com

By: */s/ Elizabeth Robben Murray*
Elizabeth Robben Murray